Moskowitz, J.
(concurring). This appeal requires us to consider whether a postarbitration agreement that eliminates the rights of nonparties to assert collateral estoppel would have been enforceable. Because the doctrine of law of the case is applicable, but exceptional circumstances exist involving policy considerations underlying postarbitration limiting agreements, including the opportunity for collusion, the potential agreement between plaintiff and his former business partner would not have been enforceable.
This dispute arises largely from an arbitration that occurred in the late 1990’s between plaintiff and his former business partner, Norman Katz, over plaintiffs buyout of Katz’s share in their business. Specifically, in June 1996, plaintiff and Katz executed a Purchase Agreement in which plaintiff agreed, inter alia, to acquire a majority interest in I. Appel and to purchase certain loans made to the company by Katz and Katz’s son. The transaction closed with a partial payment that relied on financial information from certain financial documents from 1995 (the 1995 financials). Within 45 days after the closing, Ma-honey Cohen, certified public accountants, were supposed to determine the value of the company (determination of value or DOV) so that the parties could calculate the final share price. Mahoney did not prepare the DOV in that time frame, however, *231 and Katz sought to enjoin its completion, as well as to lock in the Purchase Agreement share price based upon the 1995 financials.
Mahoney ultimately completed the DOV in October 1996. The DOV revealed that the company’s “previously stated inventory values [were] grossly overstated resulting in a difference in net worth of approximately $10 million.”
Plaintiff commenced arbitration to rescind the Purchase Agreement. In the arbitration, plaintiff asserted, inter alia, that he had relied upon I. Appel’s 1995 financial statement when making his decision to purchase Katz’s interest and loans to I. Appel. On November 22, 1999, the arbitrators ruled against plaintiff, concluding that plaintiff had not reasonably relied upon the 1995 financials when making his decision.
Subsequently, Katz and plaintiff considered entering into a postarbitration agreement to limit the collateral estoppel effect of the award to allow plaintiff to sue Mahoney Cohen, but apparently abandoned discussions and did not enter any limiting agreement. At around the same time, plaintiff requested that his lawyers advise him regarding the collateral estoppel effect of the arbitral award vis-a-vis Mahoney Cohen and whether a limiting agreement could protect his claims. However, defendants never rendered this advice. Instead, the firm advised plaintiff that they could not represent him against Mahoney Cohen and, seven days before the statute of limitations against Mahoney Cohen was to expire, defendants officially terminated their representation of plaintiff.
On May 19, 2000, plaintiff sued Mahoney Cohen for, inter alia, accounting malpractice. The trial court dismissed this suit on the grounds of collateral estoppel because of the arbitral findings, namely that plaintiff had not relied on the 1995 financials. This Court affirmed (see I. Appel Corp. v Mahoney Cohen & Co., CPA, 294 AD2d 196 [2002]), noting that, in the arbitration “plaintiff has had an extensive, full and fair opportunity to litigate the reliance issue” (id. at 197).
Plaintiff then commenced this action against his lawyers for legal malpractice for, inter alia, failing to advise him that a limiting agreement with Katz could have avoided the collateral estoppel effect of the arbitral award. The trial court initially dismissed the action. Plaintiff then moved to vacate the order and for leave to amend the complaint.
Plaintiffs lawyers, the defendants here, opposed, arguing that an agreement to limit collateral estoppel, after the comple *232 tion of the arbitration, does not apply to a nonparty asserting a collateral estoppel defense in a subsequent litigation with one of the parties. The motion court disagreed and, in 2005, a different panel of this Court also disagreed: “Defendants have not established, as a matter of law, that even if plaintiff and Katz had entered into an agreement limiting the collateral estoppel effect of the arbitration award, the Mahoney Cohen lawsuit would nonetheless have been dismissed on collateral estoppel grounds” (17 AD3d 275, 276 [2005]). That 2005 panel also held that “[i]n circumstances involving arbitration, the parties themselves can formulate their own contractual restrictions on the carry-over estoppel effect” (id.). This Court subsequently denied defendants’ motion for leave to appeal to the Court of Appeals.
The case eventually proceeded to trial. The jury concluded that: (1) there was an attorney-client relationship between the parties in January and February 2000, (2) defendants failed to exercise the degree of care, skill and diligence an ordinary member of the legal profession would commonly use by failing to advise plaintiff that a limiting agreement between plaintiff and Katz would likely be effective to bar Mahoney Cohen’s collateral estoppel defense, and (3) if defendants had so advised plaintiff, he and Katz would have entered into a limiting agreement. The jury also found Mahoney Cohen guilty of accounting malpractice, but found that plaintiffs own negligence was also a “substantial factor” in causing his losses. Thus, the jury apportioned fault as 60% defendant lawyers, 40% plaintiff. Relying on this Court’s 2005 decision, the trial court denied defendant’s motion for a JNOV (2011 NY Slip Op 31485[U] [2011]).
On this appeal, posttrial, defendants again argue that the jury verdict cannot stand because any postaward agreement to limit Mahoney Cohen from asserting collateral estoppel would not have been enforceable. Unfortunately for defendants, this Court has already passed on this issue and rejected defendants’ position in the 2005 decision.[1] This circumstance is all the more unfortunate because the enforceability of postaward limiting agreements remains an open issue with serious policy implications. In New York, unless the parties to the arbitration agree otherwise, a judicially confirmed private arbitration award has collateral estoppel effect (see Clemens v Apple, 102 AD2d 236 *233 [1984], affd 65 NY2d 746 [1985]; Matter of American Ins. Co. [Messinger — Aetna Cas. & Sur. Co.], 43 NY2d 184 [1977]).[2]
Parties to an arbitration agreement may, however, limit the collateral estoppel effect of an award as between themselves by including a contractual restriction in their agreement (Messinger at 193). They can also restrict the ability of nonparties to assert collateral estoppel, at least so long as the parties enter into the limiting agreement prior to the arbitration (see Kerins v Prudential Prop. & Cas., 185 AD2d 403 [1992] [court upheld stipulation in contract that no award made in arbitration will have estoppel impact]). There are policy reasons behind allowing the parties to an arbitration to agree to limit the collateral estoppel effect of an award against a nonparty. First, while arbitration can be a cheaper, faster alternative to litigating in court, it can also be an imprecise and truncated proceeding that does not allow for full development of the record. Parties may want this quick and informal procedure when the stakes are not high or where there is only one issue between them:
“An agreement to arbitrate particular claims reflects each party’s conclusion that the immediate stakes make it preferable to avoid the delay and expense of court proceedings, and instead to resolve the matter between themselves without resort to the judicial process. Under such circumstances, each party is willing to risk that the arbitration will result in a ‘final’ and ‘binding’ defeat with respect to the submitted claims, even though the party would have won in court, and even though the arbitrator’s errors must be accepted without opportunity to review” (Vandenberg v Superior Court, 21 Cal 4th 815, 832, 982 P2d 229, 239 [1999]; see also Messinger at 191 [“the voluntary choice of the arbitration forum necessarily imports acceptance of the more summary, informal and less structured procedures which characterize arbitration as compared with judicial litigation”]).
However, while arbitration may provide advantages in terms of time and money, “these same features can be serious, unexpected disadvantages if issues decided by the arbitrator are *234 given leveraged effect in favor of strangers to the arbitration” (Vandenburg, 21 Cal 4th at 832, 982 P2d at 239). Thus, in New York, parties may agree ahead of time to limit the collateral estoppel effect of the arbitral award (see Kerins at 404; see also Matter of State Farm Ins. Co. v Smith, 277 AD2d 390, 391 [2000]). Because arbitration is a creature of contract, allowing the parties to limit the collateral estoppel effect of an arbitral award comports with the policies underlying freedom of contract and fulfils the expectations of the parties.
However, whether parties may agree to limit the scope of an arbitration decision after it is rendered so that nonparties cannot use it to assert collateral estoppel presents a more difficult question. Conflicting policies are at work. On the one hand, freedom of contract dictates that parties to an arbitration should be free to contract to the scope of that arbitration, including the reach of the arbitral decision. If parties are not free to limit collateral estoppel effect in relation to nonparties, there could be a chilling effect on the agreement to engage in arbitration at all and with it the efficient disposition of private controversies. Finally, it could result in injustice to hold a party to a decision for all intents and purposes, when the proceeding that engendered that decision may have been truncated or limited to a narrow purpose.
On the other hand, if the arbitrator actually and necessarily decided the issue and the party against whom estoppel is invoked had full incentive and opportunity to litigate the matter, there are policy considerations militating in favor of giving collateral estoppel effect. First, there is the danger of inconsistent rulings. Worse, one could possibly envision a situation where a court dismisses a lawsuit against a nonparty because of collateral estoppel, only to have that dismissal undermined when the parties to the arbitration enter into a postaward limiting agreement. This is clearly unworkable and, in the commercial context where certainty and stability are paramount concerns, would wreak havoc. Moreover, where, as here, parties litigate fully without a limiting agreement, they have no legitimate expectation that there will be another chance to litigate the same issue again. Most important, to allow a losing side to limit the collateral estoppel effect against nonparties by somehow obtaining a postaward limiting agreement from the prevailing party invites abuse. A party could simply offer a former adversary money or other consideration for a release from collateral estoppel that would then allow claims against nonpar *235 ties (who are perhaps deep pockets) that the arbitrators’ finding would otherwise preclude. This sort of collusion is to be discouraged, not encouraged.
Here, plaintiff does not dispute that he had a full opportunity to present his version of the facts to the arbitrators, and this Court has so found (I. Appel Corp. v Mahoney Cohen & Co., CPA, 294 AD2d 196 [2002], supra). Discovery lasted more than 18 months and continued during the arbitration. The panel held 18 days of hearings that included testimony from 16 witnesses. The panel received more than 1,450 exhibits, containing many thousands of pages. After this full blown proceeding, the arbitrators made a determination that plaintiff had not relied on the 2005 financials. Given the complete nature of the arbitration, the factual finding the arbitrators made was fully informed. Under these circumstances, there would be no inherent unfairness in giving that decision full collateral estoppel effect against plaintiff. Indeed, to do otherwise would not only give plaintiff a second bite at the apple, but would invite collusion, especially as Katz presumably could assert the same malpractice claims against Mahoney Cohen.
Here, the parties agree that the issue of whether plaintiff and Katz could have entered into a limiting agreement is purely one of law. That legal issue was part and parcel of the 2005 decision. First, the 2005 decision specifically held that “[i]n circumstances involving arbitration, the parties themselves can formulate their own contractual restrictions on the carry-over estoppel effect” (17 AD3d at 276). The majority ignores this language. In addition, without a decision accepting the viability of postaward limiting agreements, the case could not have proceeded.
A prior decision on an appeal constitutes law of the case and is conclusive on subsequent appeals, except in extraordinary circumstances, such as a change in the law by the Court of Appeals or when the prior panel has overlooked a controlling decision (see Sea Trade Mar. Corp. v Hellenic Mut. War Risks Assn. [Bermuda] Ltd., 79 AD3d 601 [2010], lv dismissed and denied 17 NY3d 783 [2011]; see also Welch Foods v Wilson, 262 AD2d 949, 950 [1999] [“(t)he doctrine of law of the case is not an absolute mandate on the court, since it may be ignored in extraordinary circumstances vitiating its effectiveness as a rule fostering orderly convenience . . . The error sought to be corrected must, however, be so plain . . . (that it) would require (the) court to grant a reargument of a cause” (internal quotation marks omitted)]).
*236 Dicta from the Court of Appeals decision in Messinger (43 NY2d 184 [1977]) is not directly controlling precedent, such that the 2005 decision was “so plain that it would require the court to grant a reargument of the cause.” In Messinger, the Court of Appeals noted that parties to an arbitration “cannot, of course, impose similar limitations which would impair or diminish the rights of third persons. In this sense there is a real difference between situations of issue preclusion between the same parties and issue preclusion between different parties” (43 NY2d at 194). However, Messinger did not involve a limiting agreement, much less one postdating an award. Nor did Messinger involve a full-blown arbitration. Thus, the facts were so different that Messinger cannot be considered direct precedent on the issue as it presents here.
Also, contrary to the majority’s view, law of the case is applicable here because, the issue the 2005 Court decided was one of law[3] and is the same issue before this Court now. The cases the majority cites are irrelevant because they involved factual issues at different procedural junctures. 191 Chrystie LLC v Ledoux (82 AD3d 681 [2011]) involved a question of fact as to whether the defendant met the criteria to be a protected tenant under a “Qualified Occupant Regulation.” This issue arose because of a counterclaim defendant interposed after this Court rendered its first decision in the case. Tenzer, Greenblatt, Fallon & Kaplan v Capri Jewelry (128 AD2d 467 [1987]) involved an issue of fact concerning counterclaims for legal malpractice.
However, it would appear that the 2005 decision mistakenly applied dicta in Messinger, Kerins and State Farm that parties may enter into agreements to limit the carry-over collateral estoppel effect of an arbitral award, at least before that award is rendered, to a postaward limiting agreement. The 2005 decision does not discuss the opportunity for collusion or even competing policy considerations. Thus, the decision inadvertently held that the parties to an arbitration could enter into a limiting agreement after that arbitration is over. Standing alone, this error would not be enough to depart from applying law of the case.
However, extraordinary circumstances do exist to ignore the law of the case. No decision in New York had ever before held that parties to an arbitration could, after that arbitration was over, limit the collateral estoppel effect as to nonparties. By *237 interpreting prior precedent as allowing postarbitration limiting agreements, the 2005 decision in effect created the circumstances by which defendants became liable for failing to advise Feinberg properly.
Alternatively, law of the case is inapplicable where new evidence emerges later in the proceeding (see Sea Trade, 79 AD3d at 602). The evidence adduced at trial ultimately did narrow the question from the issue this Court had to contemplate in 2005. Defendants’ argument during the 2005 appeal relied on the assumption that any postaward limiting agreement would be invalid to impair the rights of third parties and thus this Court held “[i]n circumstances involving arbitration, the parties themselves can formulate their own contractual restrictions on the carry-over estoppel effect” (17 AD3d at 276). At trial, it became clear that the agreement Feinberg and Katz contemplated was not a general agreement to limit the collateral estoppel effect, but would have been directed solely at Mahoney Cohen. It also emerged that at or before the time Feinberg claims he and Katz would have negotiated a limiting agreement, Ma-honey Cohen and others had already either asserted collateral estoppel as defenses in separate lawsuits or otherwise indicated an intent to use collateral estoppel as a defense.
Because these facts emerged during the trial, the 2005 decision necessarily did not consider whether a postaward agreement eliminating the right of one particular nonparty to assert collateral estoppel is enforceable. Nor did the 2005 decision consider whether this sort of limiting agreement would be enforceable where the parties enter into it after others have asserted collateral estoppel as defenses in subsequent litigation.
A limiting agreement under these circumstances would not be enforceable. To allow parties, who litigated tooth and nail in an arbitration, both of whom have potential claims against a particular nonparty, to single out that nonparty in a limiting agreement is an obvious invitation to collusion. That the parties to the arbitration only started to consider this limiting agreement after or at the same time several nonparties had already asserted collateral estoppel, smacks of collusion so great it borders on the ridiculous.
The majority’s approach makes little sense given our well-established rules for collateral estoppel. The majority appears to say that so long as parties have the opportunity to litigate an issue fully in the arbitration, then no limiting agreement would ever be enforceable, no matter when the parties enter into it *238 (i.e., prior to or post award). But, if parties do not have a chance to litigate an issue completely, then collateral estoppel is not available anyway. The majority has thus collapsed the rule for limiting agreements into the rule for collateral estoppel.
Moreover, to avoid law of the case, the majority’s analysis presumes that, in this case, the trial established for the first time that Feinberg had litigated the issues at arbitration “fully, vigorously and exhaustively.” The majority advocates that this circumstance should have been sufficient for the trial court to grant a JNOV However, that the arbitration between Feinberg and Katz was a full blown proceeding has never been a contested issue of fact in this case. The parties conceded the point long ago and this Court passed on it in 2002 in the related litigation (see I. Appel Corp., 294 AD2d at 196-197 [“The issue of whether plaintiff Feinberg had relied on the 1995 financial statement prepared by defendants was fully litigated in an arbitration proceeding brought by Feinberg . . . (who) had an extensive, full and fair opportunity to litigate the reliance issue”]).
Saxe, J.E, and Acosta, J., concur with Catterson, J.; Moskowitz and Renwick, JJ., concur in a separate opinion by Moskowitz, J.
Judgment, Supreme Court, New York County, entered June 17, 2011, bringing up for review an order of the same court and Justice, entered June 7, 2011, reversed, on the law, with costs, and the motion for judgment notwithstanding the verdict granted. The Clerk is directed to enter judgment in favor of defendants dismissing the complaint. Appeal from order dismissed, without costs, as subsumed in the appeal from the judgment.

. Defendants’ argument during the 2005 appeal relied on the assumption that any postaward limiting agreement would be invalid to impair the rights of third parties.

. A minority of jurisdictions take the opposite view (see e.g. Vandenberg v Superior Court, 21 Cal 4th 815, 832, 982 P2d 229, 239 [1999] [California Supreme Court decided 4-2, under California law, that arbitration awards will not have collateral estoppel effect unless parties agree]).

. The parties agree that the issue of the validity of postaward limiting agreements is one of law.